UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD RENE GARCIA, | Case No. 1:22-cv-01622-CDB (SS) |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING ACTION PURSUANT TO SENTENCE FOUR OF 42 U.S.C. §405(g) |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | (Doc. 14) |

Plaintiff Leonard Rene Garcia Jr. ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 10, "AR"), the Supplemental Administrative Record (Doc. 11, "SAR"),[1] and the parties' briefs (Docs. 14, 17, 18), which were submitted without oral argument. Upon review of the record, the Court finds and rules as follows.[2]

///

_____

[1] The AR includes an oral hearing transcript of a claimant other than Plaintiff and is therefore disregarded. *See* (AR 36-47). The Court refers to the SAR, which is the correct oral hearing transcript of Plaintiff. *See* (SAR 1456-1498).

[2] On February 8, 2023, after the parties consented to the jurisdiction of a U.S. Magistrate Judge for all further proceedings pursuant to 28 U.S.C. § 636(c)(1), this action was reassigned to the undersigned. (Doc. 9).

## I.    BACKGROUND

### A.    Administrative Proceedings and ALJ's Decision

On April 21, 2020, Plaintiff filed applications for disability insurance benefits and supplemental security income with an alleged disability onset date of August 2, 2017.  (AR 16).  Plaintiff's claim was initially denied on September 21, 2020, and again upon reconsideration on January 12, 2021.  *Id.*  Plaintiff requested a hearing before an Administrative Law Judge on February 19, 2021.  *Id.*  Gregory Moldafsky, the Administrative Law Judge ("ALJ"), held a telephone hearing on September 7, 2021, during which Plaintiff and impartial vocational expert Donna J. Bardsley ("VE") testified.  *Id.*  The ALJ issued an unfavorable decision on December 3, 2021, finding Plaintiff was not disabled.  (AR 13, 18-28).  The Appeals Council denied Plaintiff's request for review on October 25, 2022, rendering the ALJ's decision as the final decision of the Commissioner. (AR 1).  Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision.  (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. §§ 404.1520(a) and 416.920(a).  (AR 18-28).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 2, 2017, the alleged onset date.  (AR 18).

At step two, the ALJ found that Plaintiff had the following severe medically determinable impairments ("MDIs") which significantly limit the ability to perform basic work activities as required by Social Security Ruling ("SSR") 85-28: bilateral carpal tunnel syndrome, bilateral cubital tunnel, hand tremor, degenerative disc disease of the thoracic spine, anxiety disorder, bipolar disorder, posttraumatic stress disorder, obesity,[3] and history of atypical chest pain with no aortic dissection or aneurysm.  (AR 18-19).  The ALJ noted that Plaintiff has also been assessed with sleep apnea, hypertension, gastroesophageal reflux disease, umbilical hernia, headaches, and suspected glaucoma with a remote history of left ankle and left knee surgeries but that the "evidence

---

[3] As to obesity, because Plaintiff is approximately five feet ten inches tall and has weighed as much as 394 pounds, the ALJ concluded that obesity in this case is a severe impairment as it contributes to Plaintiff's reduced ability to perform exertional activities.  (AR 21) (citing Ex. 26F; SSR 19-2p).

2

indicates that these impairments were either acute and successfully treated in the short term, or else were not particularly symptomatic during the alleged period, requiring little more than routine and/or conservative management" and that "no practitioner has mentioned any significant functional limitations associated with these conditions." (AR 19). The ALJ therefore found that these additional impairments have not caused more than a minimal degree of functional loss, are not severe under the regulations, but nonetheless noted he "considered all of [Plaintiff's MDIs], including those that are not severe, when assessing [Plaintiff's] residual functional capacity." *Id.*

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (AR 19).

The ALJ considered the severity of Plaintiff's mental impairments, considering whether the four broad functional areas of mental functioning listed in the "paragraph B" criteria are satisfied.[4] Because Plaintiff's mental impairments did not cause at least two "marked" limitations or one "extreme" limitation, and do not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities, the ALJ found the paragraph B criteria were not satisfied and that the mental impairments are non-severe. (AR 19-20). The ALJ also found that the evidence in this case fails to establish the presence of "paragraph C" criteria.[5] (AR 20).

Prior to step four, the ALJ found that Plaintiff has the RFC to perform light work as defined

---

[4] The "paragraph B" criteria evaluate mental impairments in the context of four broad areas of functioning: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The severity of the limitation a claimant has in each of the four areas of functioning is identified as either "no limitation," "mild," "moderate," "marked," or "extreme." *Id.* To satisfy the paragraph B criteria, a claimant must have an "extreme" limitation in at least one of the areas of mental functioning, or a "marked" limitation in at least two of the areas of mental functioning. *Id.*

[5] "Paragraph C," subsection (1) requires a "highly structured setting that is ongoing that diminishes the signs and symptoms of [Plaintiff's] mental disorder." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(C)(1). "Paragraph C," subsection (2) requires that Plaintiff "have minimal capacity to adapt to changes in [Plaintiff's] environment or to demands that are not already part of [Plaintiff's] daily life." *Id.* at subsection (C)(2).

in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except for the following non-exertional limitations:

> [Plaintiff] can walk and stand 4 hours in an 8-hour day; occasionally climb ramps and stairs; never climb ladders, ropes and scaffolds; occasionally stoop, balance, kneel, and crouch; never crawl; never work at unprotected heights; frequent handling/fingering with the bilateral upper extremities; and occasionally perform overhead reaching with the bilateral upper extremities. In addition, [Plaintiff] is limited to simple (as defined in the D.O.T. as SVP ratings 1 and 2), repetitive tasks in a work environment that is not fast paced or has strict production quotas (*e.g.*, work that is goal based or measured by end result) with few changes in work setting or processes and no more than incidental interaction with the general public (no required job related interaction) and no more than occasional interaction with co-workers and supervisors.

(AR 21).

In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted he followed the two-step process as set forth in 20 C.F.R. §§ 404.1529 and 416.929, SSR 16-3p, and 20 C.F.R. §§ 404.1520c and 416.920c. *Id.* The ALJ noted Plaintiff's allegations of disability from the record:

> [Plaintiff] alleges disability due to a combination of his physical and mental impairments. Specifically, [he] stated that he experiences significant neck pain and has difficulty moving his head from side to side due to the results of a work injury in 2017 where he fell from a chair and received workers' compensation payment. He also reports tingling and sensation deficits in both hands with hand tremors and decreased grip strength due to carpal tunnel syndrome. He also reported bladder issues and indicated that he has a torn rotator cuff, although there is no significant mention of these issues in the record and he indicated that he plans to address his cardiac and sleep apnea symptoms first. He also reports mental health symptoms, including worry about death and thoughts of past trauma, including flickering lights that remind him of being in jail. [Plaintiff] reported that he is scared that others are watching and talking about him, and he feels as though he has to look over his shoulder. His medications include Prilosec (heart burn and acid reflux), Latuda (bipolar disorder), gapbapentin/Neurontin (nerve pain), and Lopressor (blood pressure). [Plaintiff] indicated that he has a cane in case he falls and he stated that he no longer takes pain medication as he has a history of addiction to pain medication. He stated that he uses medical cannabis to treat swelling and pain. [Plaintiff] reports side effects from medication including lack of concentration, blurred vision, double vision, insomnia, muscle weakness, and fatigue.

(AR 22) (citing Exs. 6E, 14E, 1F, 28F-30F). Upon consideration of the evidence, the ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms, but that his

4

statements concerning the intensity, persistence, and limiting effects of symptoms are not entirely consistent with the medical evidence and other record evidence. *Id.* The ALJ considered Plaintiff's allegations of his level of activity from his hearing testimony to the extent these statements can reasonably be accepted as consistent with the objective medical and other evidence:

> [Plaintiff] acknowledged a modest range of activities, including attending appointments, performing household activities, and simple meal preparation, although he noted that he now orders through DoorDash most of the time. He also drives short distance, shops by computer, pays bills, cares for two dogs, donates plasma, watches sports, and has daily conversations in person and by telephone.

(AR 22). The ALJ found that Plaintiff's level of activity, though not conclusive to any issue, is consistent with the assessed RFC. *Id.* The ALJ, considering the record of Plaintiff's hearing testimony, medical evidence, treatment notes, mental health treatment history, activities of daily living ("ADLs"), and prior administrative medical findings, determined that the record does not support limitations that would prevent him from working within the RFC. (AR 22-26). The ALJ concluded that Plaintiff's self-described activities, coupled with the ALJ's findings, demonstrate that Plaintiff can perform functions within the assessed RFC and that he "is not as limited as he claims." (AR 25). The ALJ found that given Plaintiff's history of degenerative disc disease with carpal tunnel syndrome and cubital tunnel syndrome with obesity and cardiac issues, Plaintiff is limited to a reduced range of light work with postural, environmental, and manipulative limitations. As to Plaintiff's ongoing symptomology due to mental health impairments, the ALJ found that Plaintiff is limited to simple and repetitive tasks that are not fast faced or have strict production quotas with no more than incidental interaction with the general public and no more than occasional interaction with co-workers and supervisors. *Id.* The ALJ concluded that the assessed RFC is consistent with and supported by the observations of treating sources in the medical records, the findings of consultants, and Plaintiff's own statements about his activities and abilities. (AR 26).

At step four, the ALJ determined that Plaintiff is unable to perform any past relevant work under 20 C.F.R. §§ 404.1565 and 416.965. (AR 26-27). The ALJ found that Plaintiff was a younger individual on the alleged disability onset date and has at least a high school education. (AR 27).

At step five, the ALJ found that there are jobs that exist in significant numbers in the

national economy that Plaintiff could perform.  *Id.*  The ALJ cited collator, mail clerk, and marking clerk based on the testimony of the vocational expert.  *Id.*  The ALJ therefore concluded a finding of "not disabled" was appropriate under sections 216(i) and 223(d) of the Act from August 2, 2017, through the date of the decision.  (AR 28).

### B.    Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.    LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely.  Social Security Act § 205, 42 U.S.C. § 405(g).  In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v.*

*Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the

enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III.   ISSUES AND ANALYSIS[6]

Plaintiff seeks judicial review of the Commissioner's final decision denying her application and raises six (6) issues:

1. Whether the ALJ failed to provide specific, clear, and convincing reasons for discounting Plaintiff's allegations of mental dysfunction.

2. Whether the ALJ failed to evaluate the severity and limiting effects of the following:

   a. Plaintiff's obstructive sleep apnea;

---

[6] Filings are referenced herein according to the associated CM/ECF-designated pagination.

          b.  Plaintiff's carpel and cubital tunnel syndromes; and

          c.  Plaintiff's morbid obesity.

    3.  Whether the ALJ failed to evaluate the treating medical source opinions of Plaintiff's mental health therapists.

    4.  Whether the ALJ failed to explain his departure from the mental work restrictions assessed by the state agency psychologists and the consultative psychological examiner.

(Doc. 14 at 7-8).

**A.    Whether the ALJ Failed to Provide Specific, Clear, and Convincing Reasons for Discounting Plaintiff's Allegations of Mental Dysfunction**

    1.    Parties' Contentions

Plaintiff contends the ALJ's consideration of his daily living activities, without elaborating how these activities undermined his testimony or demonstrated that he could work full-time on a consistent and ongoing basis, is not a clear and convincing reason to discount his allegations. (Doc. 14 at 14-15). Plaintiff further asserts the ALJ failed to identify specific inconsistencies between his testimony and the record medical evidence. *Id.* at 16-17.

Defendant contends the ALJ properly evaluated Plaintiff's allegations of disabling mental limitations in finding that these alleged limitations were not entirely consistent with the medical or other evidence. (Doc. 17 at 10). Defendant argues the ALJ did not completely reject Plaintiff's testimony concerning his mental health symptoms as the ALJ nonetheless accepted that such impairments caused significant limitations and therefore assessed a limited RFC. *Id.* at 11. Defendant asserts the ALJ properly discounted Plaintiff's allegations because the overall mental status examinations did not support debilitating mental limitations, there was evidence of improvement with treatment consisting of therapy and psychiatric medications, and certain of Plaintiff's daily activities demonstrated that he was not as limited as alleged. *Id.* at 12.

    2.    Governing Authority

"In step two of the disability determination, an ALJ must determine whether the [plaintiff] has a medically severe impairment or combination of impairments." *Keyser v. Comm'r of Soc. Sec. Admin.,* 648 F.3d 721, 725 (9th Cir. 2011). A plaintiff has a severe impairment when the evidence

establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1522(a), 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, pushing, and carrying, and mental functions such as understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. §§ 404.1522(b), 416.922(b).

The ALJ is responsible for determining credibility,[7] resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A plaintiff's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Determining whether a plaintiff's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. *Id.* at 1112. The ALJ must first determine if "the [plaintiff] has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This

---

[7] SSR 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character but an endeavor to "determine how symptoms limit [the] ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3. Nevertheless, the Ninth Circuit continues to reference an ALJ's "credibility" assessment when reviewing claims that an ALJ impermissibly discounted a claimant's testimony. *See*, *e.g.*, *Ferguson v. O'Malley*, 95 F.4th 1194, 1204 (9th Cir. 2024).

does not require the plaintiff to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen*, 80 F.3d at 1282.

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the [plaintiff's] testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281). *See Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse credibility finding must be based on "clear and convincing reasons"). The ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the plaintiff's testimony on permissible grounds and did not arbitrarily discredit the plaintiff's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the [plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (*quoting Wilson v. Berryhill*, 757 Fed. Appx. 595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a plaintiff's credibility, including "(1) ordinary techniques of credibility evaluation, such as the [plaintiff's] reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the [plaintiff] that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the [plaintiff's] daily activities." *Smolen*, 80 F.3d at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors identified in SSR 16-3P. *Id*. (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)). Accord

*Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304, at *7. *See* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing. *Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most demanding requirement in Social Security cases.'" *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th Cir. 2014) (*quoting Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "A finding that a [plaintiff's] testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible grounds and did not arbitrarily discredit a [plaintiff's] testimony regarding pain." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter,* 260 F.3d 1044, 1049 (9th Cir. 2001). *See* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability solely because the objective medical evidence does not substantiate your statements."). Rather, where a plaintiff's symptom testimony is not fully substantiated by the objective medical record, the ALJ must provide additional reasons for discounting the testimony. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "The ALJ must specify what testimony is not credible and identify the evidence that undermines the [plaintiff's] complaints – '[g]eneral findings are insufficient.'" *Id.* (*quoting Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

However, the medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and convincing standard. *Hairston v. Saul*, 827 Fed. Appx. 772, 773 (9th Cir. 2020) (*quoting Carmickle*, 533 F.3d at 1161).

3.    Analysis

The ALJ found that Plaintiff's severe impairments—bilateral carpal tunnel syndrome, bilateral cubital tunnel, hand tremor, degenerative disc disease of the thoracic spine, anxiety disorder, bipolar disorder, posttraumatic stress disorder, obesity, and history of atypical chest pain with no aortic dissection or aneurysm—significantly limit him from performing basic work activities. (AR 18-19). The ALJ summarized Plaintiff's subjective symptom testimony regarding his activities of daily living from the hearing: "[Plaintiff] acknowledged a modest range of activities, including attending appointments, performing household activities, and simple meal preparation, although he noted that he now orders through DoorDash most of the time. He also drives short distance, shops by computer, pays bills, cares for two dogs, donates plasma, watches sports, and has daily conversations in person and by telephone." (AR 22). The ALJ also noted Plaintiff's allegations of disability from the record. *See id.* After finding that Plaintiff's impairments could reasonably be expected to cause some of his alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the record. *Id.*; *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely include this [boilerplate] statement in their written findings as an introduction ... before [identifying] what parts of the claimant's testimony were not credible and why.").

In discounting Plaintiff's testimony regarding his mental health symptoms, the ALJ determined the record does not support limitations that would prevent Plaintiff from working within the assessed RFC, relying on the following: (1) Plaintiff's daily activities are consistent with the assessed RFC, and (2) the record evidence demonstrates that Plaintiff can perform functions within

13

the assessed RFC.  (AR 25).  The ALJ nonetheless credited Plaintiff's ongoing symptomology due to mental health impairments in concluding that Plaintiff is limited to simple and repetitive tasks that are not fast paced or have strict production quotas with no more than incidental interaction with the general public and no more than occasional interaction with co-workers and supervisors.  *Id.*

               `    *a.*    *Plaintiff's activities of daily living do not provide a clear and convincing reason to reject his symptomology testimony.*

An ALJ may reject a plaintiff's subjective symptom testimony if it is inconsistent with the plaintiff's activities of daily living.  *Tommasetti*, 533 F.3d at 1039.  Specifically, in discounting a plaintiff's credibility, an ALJ properly may rely on ADLs: (1) when daily activities demonstrate the plaintiff has transferable work skills, and (2) when daily activities contradict the plaintiff's testimony as to the degree of functional limitation.  *Orn*, 495 F.3d at 639.  However, "disability [plaintiffs] should not be penalized for attempting to lead normal lives in the face of their limitations."  *Reddick*, 157 F.3d at 722; *see Smolen*, 80 F.3d at 1284 n.7 ("The Social Security Act does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.").  "The mere fact that a plaintiff has carried on with certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [their] credibility[.]"  *Webb*, 433 F.3d at 688 (quoting *Vertigan*, 260 F.3d at 1050).

Here, the ALJ considered and relied on Plaintiff's reported "modest range of activities," including attending appointments, performing household activities, simple meal preparation, driving short distances, online shopping, paying bills, caring for two dogs, donating plasma, watching sports, and having daily conversations in person and by telephone.  (AR 22).  The ALJ determined that the findings are consistent with the RFC as assessed but do not support the extent of his subjective complaints and "does not support limitations that would prevent [Plaintiff] from working within the [RFC]."  (AR 22, 25).  In evaluating the severity of Plaintiff's mental impairments considering the "paragraph B" criteria, the ALJ found that Plaintiff's activities "suggests that he is able to learn, recall, and use information to perform work activities" and that "he has no more than a mild limitation in his ability to regulate his emotions, control his behavior,

14

and maintain well-being in a work setting." (AR 20).

However, in rejecting Plaintiff's testimony, the ALJ simply recited a list of ADLs from the record which he believed indicates Plaintiff has a higher degree of functioning than alleged and demonstrates that Plaintiff can perform work activities. The ALJ failed to adequately explain how Plaintiff's described ADLs conflict with his claimed limitations or demonstrate an ability to function in the workplace. Plaintiff's intermittent engagement in these activities does not undermine his claim that he is unable to sustain work. Nor is the undersigned persuaded that it is inconsistent that Plaintiff at times can perform general household activities, prepare food, drive, and shop while claiming he had difficulty in concentrating, completing tasks, and following instructions. *See Webb*, 433 F.3d at 688; *Orn*, 495 F.3d at 639 ("The [Act] does not require that [plaintiffs] be utterly incapacitated to be eligible for benefits.").

Nor does the ALJ show how these occasional activities equate to transferable work skills. Activities such as online shopping, personal care, or taking care of his pets does not render him able to work, and the ALJ fails to show how Plaintiff's occasional activities equate to transferable work skills. *See, e.g., Wilson v. Comm'r of Soc. Sec. Admin.*, 303 Fed. Appx. 565, 566 (9th Cir. 2008) (finding a plaintiff's occasional driving does not render him able to work); *Costa v. Berryhill*, 700 Fed. Appx. 651, 653 (9th Cir. 2017) ("The ability to accomplish daily tasks irregularly does not necessarily equate with an ability to work."). Thus, the undersigned cannot ascertain which of Plaintiff's symptomology testimony the ALJ rejected based on ADL evidence, or why. *See, e.g., Isis A. v. Saul*, No. 18-cv-01728-W-MSB, 2019 WL 3554969, at *6 (S.D. Cal. Aug. 5, 2019) ("Because the ALJ did not identify any actual inconsistency in his opinion or describe his reasoning, the Court cannot ascertain which of Plaintiff's symptom and pain testimony the ALJ rejected based on the ADL evidence.") (citing *inter alia Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)).

For these reasons, the ALJ did not identify a specific, clear, and convincing reason for discrediting Plaintiff's mental health symptom testimony when he failed to explain how those ADLs either contradicted Plaintiff's testimony or equaled transferable work skills.

///

15

> b.    *The ALJ's summary of the record evidence is not a clear and convincing reason to reject Plaintiff's symptomology testimony.*

In the decision, the ALJ necessarily rejected Plaintiff's testimony regarding his mental health impairments in noting that his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence *and other evidence in the record* for the reasons explained in this decision" (AR 22) (emphasis added), despite failing to identify *what* testimony he rejected and why. Although the ALJ summarizes Plaintiff's treatment notes and medical evidence concerning his mental health issues, nowhere in the decision does the ALJ explain how or otherwise identify what of Plaintiff's testimony is inconsistent with the record evidence sufficient to discount that testimony. *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (although the ALJ provided a relatively detailed overview of Lambert's medical history, "providing a summary of medical evidence ... is not the same as providing clear and convincing reasons for finding the claimant's symptom testimony not credible.") (citing *Brown-Hunter*, 806 F.3d at 493-94). Where a plaintiff presents medical evidence of a disabling condition "along with his testimony during the hearing regarding his symptoms, … [this] establishes for the ALJ a duty to discuss Plaintiff's impairments and resulting subjective symptom testimony and, if the ALJ finds such testimony should be rejected, the ALJ must describe his reasons with specificity under the relevant clear and convincing standard." *Carr v. Kijakazi*, No. 1:21-cv-01021-CDB (SS), 2025 WL 240821, at *8 (E.D. Cal. Jan. 17, 2025). "While the Court may be able to draw inferences about what testimony may be inconsistent, the ALJ must identify those inconsistencies with specificity." *Id.* at *9 (citing *Lambert*, 980 F.3d at 1278).

Here, the ALJ erred when he necessarily rejected Plaintiff's testimony about his mental health impairments without identifying specific testimony rejected sufficient to permit the Court to discern the bases for the ALJ's rejection. *Burch*, 400 F.3d at 680 (holding an ALJ "must specify what testimony is not credible and identify the evidence that undermines" it). The ALJ failed to abide by the very regulatory provisions he cited in addressing the governing standard for weighing the evidence, 20 C.F.R. 404.1529 and SSR 16-3P (*see* AR 21), which provides: "In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which

16

your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. We will consider all of your statements about your symptoms, such as pain, and any description your medical sources or nonmedical sources may provide about how the symptoms affect your activities of daily living and your ability to work." 20 C.F.R. 404.1529 (emphasis added); *see* SSR 16-3P ("Our adjudicators must base their findings solely on the evidence in the case record, including any testimony from the individual or other witnesses at a hearing").  Because there is no record that the ALJ meaningfully considered or identified any of Plaintiff's testimony in discounting Plaintiff's allegations of disabling mental limitations, the ALJ failed to meet the clear and convincing evidentiary standard.

> **B.    Whether the ALJ Failed to Evaluate the Severity and Limiting Effects of Plaintiff's Obstructive Sleep Apnea, Carpel and Cubital Tunnel Syndromes, and Morbid Obesity**

> 1.    Parties' Contentions

Plaintiff asserts that the ALJ failed to properly evaluate the severity of his obstructive sleep apnea, carpel and cubital tunnel syndromes, and morbid obesity.  (Doc. 14 at 17-24).  Plaintiff contends the ALJ failed to find his sleep apnea as a severe impairment based on a boilerplate conclusion that it was either "acute and successfully treated in the short term, or else not particularly symptomatic during the alleged period, requiring little more than routine and/or conservative treatment" and providing no specific analysis or citation to the record regarding the impairment. *Id.* at 17 (citing AR 19).  Plaintiff asserts the ALJ failed to provide clear and convincing reasons and did not identify any specific inconsistencies of Plaintiff's testimony and the record evidence to discount his allegations of upper extremity dysfunction, relying only on Plaintiff's activities of daily living to discount the testimony. *Id.* at 20-21.  As to his morbid obesity, Plaintiff contends the ALJ failed to provide any specific evaluation of the impairment, the functional effects arising therefrom, or its exacerbating effects on his other impairments. *Id.* at 23.

Defendant contends the ALJ properly determined that Plaintiff's sleep apnea was a non-severe impairment because the ALJ found it was not particularly symptomatic, required little more than routine or conservative management, and no practitioner mentioned any significant functional

limitations resulting from sleep apnea. (Doc. 17 at 16). Defendant further argues that to the extent that Plaintiff's sleep apnea resulted in cognitive limitations, the ALJ accounted for them in the RFC determination. *Id.* at 17. As to Plaintiff's carpel and cubital tunnel syndromes, Defendant asserts the ALJ properly evaluated such impairment in assessing the RFC and incorporating a limitation to frequent, but not constant, reaching, handling, and fingering into the RFC to account for the impairment. *Id.* at 18. Defendant contends the ALJ properly evaluated the limiting effects of Plaintiff's obesity in restricting Plaintiff to light work with no more than four hours of standing and/or walking in an eight-hour day with additional postural, reaching, handling, and fingering limitations. *Id.* at 19-20. Defendant further asserts the ALJ properly considered that Plaintiff's obesity did not significantly impact his cardiovascular, respiratory, or musculoskeletal systems and therefore Plaintiff's contention that the ALJ failed to provide specific evaluation of his obesity or the exacerbation of obesity on other impairments is without merit. *Id.* at 21.

In reply, Plaintiff argues Defendant fails to rehabilitate the ALJ's insufficient evaluation of Plaintiff's sleep apnea as the ALJ did not provide any specific analysis regarding Plaintiff's treatment for sleep apnea or why he believed such treatment was routine and conservative relative to the nature of the condition. (Doc. 18 at 3). Plaintiff contends that the ALJ failed to properly evaluate the limiting effects of his carpel and cubital tunnel syndromes because given the state agency doctors did not consider new evidence pertaining to Plaintiff's upper extremity dysfunction, the ALJ should have obtained an updated medical opinion or consulted with a medical expert at the hearing. *Id.* at 4.

2.      Governing Authority

Plaintiff has the burden of producing evidence to demonstrate that she was disabled within the relevant time period. *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). At step two, an ALJ must consider if a claimant has an "impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities." 20 C.F.R. 404.1520(c). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen*, 80 F.3d at 1290 (quotation and citations omitted). Step two, then, is "a

de minimis screening device [used] to dispose of groundless claims." *Id*. An ALJ "may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is clearly established by medical evidence." *Webb*, 433 F.3d at 686-87 (quotations and citation omitted) (noting that the substantial evidence standard applies at step two); *cf. Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (the claimant failed to satisfy his step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results").

Moreover, once the ALJ finds the claimant has at least one severe impairment at Step Two, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017); *cf. Burch*, 400 F.3d at 682 (finding the ALJ's failure to consider obesity at step two not reversible error where the ALJ considered obesity in determining the RFC).

A plaintiff's RFC is "the most [the plaintiff] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). In determining the RFC, the ALJ must consider all limitations, severe and non-severe, that are credible and supported by substantial evidence in the record. *Id*. However, an ALJ's RFC finding need only be consistent with relevant assessed limitations and not identical to them. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222-23 (9th Cir. 2010) ("Although the ALJ rejected any implication in Dr. Koogler's evaluation that Turner was disabled, he did incorporate Dr. Koogler's observations into his residual functional capacity determination. ... These limitations were entirely consistent with Dr. Koogler's limitation."). An ALJ need not use the same language as the medical opinion setting forth the limitations, as long as the RFC sufficiently accounts for the limitations. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173-1174 (9th Cir. 2008). Ultimately, a plaintiff's RFC is a matter for the ALJ to determine. *Vertigan*, 260 F.3d at 1049.

### 3.   Analysis – Obstructive Sleep Apnea

The ALJ found that Plaintiff's obstructive sleep apnea, among other impairments, was non-

severe, noting that the evidence indicates that the impairment was either "acute and successfully treated in the short term or else [was] not particularly symptomatic during the alleged period, requiring little more than routine and/or conservative management." (AR 19). The ALJ noted that "no practitioner has mentioned any significant functional limitations associated" with the sleep apnea. *Id.* The ALJ therefore concluded that because this impairment has not caused more than a minimal degree of functional loss, it is not severe within the meaning of the regulations. *Id.* The ALJ then stated that he "considered all of [Plaintiff's MDIs], including those that are not severe, when assessing [Plaintiff's RFC]." *Id.*

At step two, Plaintiff need not establish "consistent evidence" of his sleep apnea-related impairments for the ALJ to proceed to the next step of the sequential evaluation of his claims. Instead, Plaintiff need only satisfy the de minimis standard to find his claims meritorious at this stage of the sequential evaluation. *Webb*, 433 F.3d at 687. To meet this burden, Plaintiff cites to the following: (1) his hearing testimony that his sleep apnea, resulting daytime sleepiness, and poor sleep at night interfere with his concentration; (2) a treatment record indicating that Plaintiff was told he had "moderate" sleep apnea; (3) a polysomnography dated May 25, 2019, indicating the impression of severe sleep apnea and a recommendation to undergo a trial of AUTO-CPAP therapy and to lose weight; and (4) a polysomnogram dated November 21, 2020, wherein a study revealed "the presence of significant obstructive sleep apnea" and recommendations for Plaintiff to, among other things, undergo a second night of CPAP titration study and to lose weight. *See* (Doc. 14 at 17) (citing AR 395, 1338, 1399, 1469-70).

Although the ALJ did not cite this or any other record evidence documenting Plaintiff's issues with sleep apnea that have more than a minimal effect on his ability to work, the ALJ adequately explained that the impairment was non-severe because it was either "acute and successfully treated in the short term or else [was] not particularly symptomatic during the alleged period, requiring little more than routine and/or conservative management" and "no practitioner has mentioned any significant functional limitations associated" with sleep apnea. Because the Court finds that the ALJ's explanation is consistent with the record evidence, the ALJ did not err in finding Plaintiff's sleep apnea non-severe. *Smolen*, 80 F.3d at 1290 ("An impairment or

combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").

Under the applicable regulations, although the ALJ must *consider* the functional effects of both severe and non-severe impairments at the RFC stage, there is no requirement that the ALJ *explain* the consideration of the impairments he finds non-severe. *See Gonzalez v. Comm'r of Soc. Sec.*, No. 1:25-cv-00047-GSA, 2025 WL 2206239, at *4 (E.D. Cal. Aug. 4, 2025) ("[T]he regulations elsewhere do indicate when and under what circumstances required 'considerations' must be explained"; comparing 20 C.F.R. § 416.945(a)(2) ["we will *consider* all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,'"] with 20 C.F.R. § 416.920c(b)(2) ["we will *explain* how we considered the supportability and consistency factors ..." when evaluating opinion evidence]) (emphasis in original); *Stoy v. O'Malley*, No. 1:24-cv-00131-GSA, 2024 WL 4752438, at *5 (E.D. Cal. Nov. 12, 2024) (same).

Because the ALJ noted that he considered all of Plaintiff's MDIs, including those that are non-severe in assessing the RFC, and the RFC accounts for limitations related to Plaintiff's deficits in memory, concentration, and task completion—deficits Plaintiff asserts stem from his sleep apnea—Plaintiff fails to identify any harmful error with respect to the ALJ's consideration of the functional impact of Plaintiff's sleep apnea, either standing alone or in combination with other impairments. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) ("The decision reflects that the ALJ considered any limitations posed by the bursitis at Step 4. As such, any error that the ALJ made in failing to include the bursitis at Step 2 was harmless."); (AR 21) (RFC finding that Plaintiff is "limited to simple[], repetitive tasks in a work environment that is not fast paced or has strict production quotas … with few changes in a work setting or processes[.]").

4.    Analysis – Carpel and Cubital Tunnel Syndromes

As to his allegations of upper extremity dysfunction related to this carpel and cubital tunnel syndromes, Plaintiff testified that: he does not drive unless he has to because of weakness in his hands and relies on his caretakers to drive him; he does not have the grip strength that he used to; he was cutting his hand and "shaking too much" during restaurant work; he experiences hand

tremors and movements; he has to switch hands when talking on the phone for long periods of time; his left hand is worse than the other; when he is physically active such as using a screwdriver, his carpel tunnel "kicks in" and "no strength whatsoever"; his male roommate helps him get in the shower to help him stand; he walks with a cane as "some sort of security" but does not use it "because it's hard to grip it"; and that his hands go numb in using his computer. (SAR 1463, 1468, 1474, 1481, 1483, 1485).

In light of his testimony and the medical record, Plaintiff argues the ALJ errored when he assessed an RFC that Plaintiff could frequently handle and finger bilaterally. (Doc. 14 at 20). Plaintiff asserts that the bases for the ALJ's assessment – that Plaintif's activities of daily living contradicted Plaintiff's allegations relevant to carpel and cubital tunnel syndromes – were inadequate because they ALJ failed to take into account the limited nature of Plaintiff's activities and failed to identify specific inconsistencies between the ADLs and Plaintiff's testimony.

As the undersigned found above, the ALJ failed to show how Plaintiff's ADLs are inconsistent with his claimed limitations or equate to transferable work skills, and the ALJ merely summarized the medical record without considering Plaintiff's testimony and explaining how Plaintiff's testimony is inconsistent with the record evidence. The undersigned likewise finds the ALJ errored in incorporating an RFC allowance for frequent handling and fingering bilaterally that necessarily rejected without adequate bases, or failed to reconcile, Plaintiff's allegations of upper extremity dysfunction derived from his carpel and cubital tunnel syndromes. *Lambert*, 980 F.3d at 1278; *Burch*, 400 F.3d at 680.

5.    Analysis – Morbid Obesity

Social Security Rulings ("SSRs") "do not have the force of law" but do "constitute Social Security Administration interpretations of the statute it administers and of its own regulations" and, thus, courts defer to SSRs "unless they are plainly erroneous or inconsistent with the [Social Security] Act or regulations." *Quang Van Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

The Social Security Administration removed obesity from the listings of impairments in 1999 and, since then, has issued SSRs addressing how obesity is to be considered when assessing disability. SSR 00-3p was in effect starting in 2000 and was superseded by SSR 02-1p in 2002.

22

SSR 02-1p was superseded by SSR 19-2p in 2019. *See C.C. v. O'Malley*, No. 23-cv-00408-LJC, 2024 WL 1354437, at *4 (N.D. Cal. Mar. 28, 2024) (citing SSR 19-2p, Titles II & XVI: Evaluating Cases Involving Obesity).

Under SSR 19-2p, the Commissioner's current governing SSR, the functional limitations caused by the medically determinable impairment ("MDI") of obesity, "alone or in combination with another impairment(s), may medically equal a listing if, for example, obesity increases the severity of a coexisting or related impairment(s) to the extent that the combination of impairments medically equals a listing." *Id.* (quotations omitted). "Under the SSR, the Social Security Administration will not make general assumptions about the severity or functional effects of obesity combined with another impairment(s), but instead evaluates each case based on the information in the case record to determine how obesity affects other impairments." *Id.* "As with any other impairment, the Social Administration must explain how it reached its conclusion on whether obesity causes any limitations." *Id.*

Plaintiff cites to *Celaya v. Halter*, 322 F.3d 1177 (9th Cir. 2003) for the proposition that ALJ's analysis of Plaintiff's obesity was inadequate because it failed to discuss the nature, severity, and functional effects of obesity when evaluating his symptomology testimony and formulating the RFC. (Doc. 14 at 23-24). In *Celaya*, the plaintiff filed her disability application when the pre-1999 listing for obesity was in effect. The plaintiff argued that she should have qualified automatically for disability status based on her height and weight. The record did not show she consistently met the weight threshold for her height, however. *Celaya*, 332 F.3d 1177, 1180–81 & n.1.

The Ninth Circuit held that, even if plaintiff's obesity did not meet the listing, "[g]iven the potential effect of obesity on [plaintiff's diabetes and hypertension], the ALJ had a responsibility to consider their interactive effect. In determining whether a plaintiff equals a listing under step three of the Secretary's disability evaluation process, the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments. The ALJ was responsible for determining the effect of Celaya's obesity upon her other impairments, and its effect on her ability to work and general health, given the presence of those impairments." *Id.* at 1182 (citation and quotations omitted).

The Ninth Circuit explained that the "ALJ's exclusion of obesity from his analysis is error in that he was addressing an illiterate, unrepresented [plaintiff] who very likely never knew that she *could* assert obesity as a partial basis for her disability. The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even when the [plaintiff] is represented by counsel.'" *Id.* at 1183 (emphasis in original; citing *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.1983)).

Here, the ALJ determined that Plaintiff's obesity was a severe MDI because Plaintiff is approximately five feet ten inches tall and weighed as much as 394 pounds such that his obesity contributes to his reduced ability to perform exertional activities. (AR 18-19); *id* at 21 (citing Ex. 26F; SSR 19-2p). The ALJ concluded that given Plaintiff's history of degenerative disc disease with carpal tunnel syndrome and cubital tunnel syndrome with obesity and cardiac issues, Plaintiff's RFC appropriately was limited to a reduced range of light work with postural, environmental, and manipulative limitations. (AR 25).

The ALJ's brief discussion of Plaintiff's obesity here does not provide a sufficient explanation concerning how obesity impacted Plaintiff's other impairments and resulting limitations, for example, relating to the strain on his joints or pain, or whether obesity caused other, less obvious, symptoms. Indeed, SSR 19-2p sets forth that the "combined effects of obesity with another impairment(s) may be greater than the effects of each of the impairments considered separately. For example, someone who has obesity and arthritis affecting a *weight-bearing joint* may have more pain and functional limitations than the person would have due to the arthritis alone." SSR 19-2p; Titles II and XVI: Evaluating Cases Involving Obesity, 84 FR 22924-01 (emphasis added). An ALJ's mere acknowledgment of obesity as an impairment is insufficient when the ALJ fails to provide "meaningful analysis" to "explain how Plaintiff's obesity impacts her other impairments or why he does not factor Plaintiff's obesity in her RFC assessment." *Mary Elizabeth C. v. Saul*, No. CV 19-3723-KS, 2020 WL 2523116, at *16 (C.D. Cal. May 18, 2020) (citing *Celaya*, 332 F.3d at 1182). Here, the record includes evidence of Plaintiff's obesity exacerbating his conditions, yet, the ALJ failed to provide a meaningful analysis of how obesity impacts Plaintiff's other impairments. The ALJ's mere mention that certain limitations in the RFC

were included due to a combination of Plaintiff's obesity and other conditions is insufficient. (AR 25); *see Yolanda P. v. Kijakazi*, No. 1:20-cv-03245-JAG, 2022 WL 17248127, at *4 (E.D. Wash. Sept. 30, 2022) (holding that ALJ's failure to address what effects plaintiff's obesity had on her knee impairments supported remand, notwithstanding ALJ's conclusory assertion that a restriction to sedentary work with additional conditions sufficiently accommodated any limitations caused by obesity); *Ramirez v. Berryhill*, No. SACV 17-0417 (KS), 2018 WL 2392155, at *11 (C.D. Cal. May 25, 2018) ("[t]he ALJ found obesity to be a severe impairment, but offers no explanation of how that impairment impacts Plaintiff's other impairments and no explanation for why obesity is not discussed").

Because the record medical evidence suggests a possible connection between Plaintiff's obesity with his other MDIs, the ALJ's failure to specifically address obesity in combination with Plaintiff's other impairments is legal error that is not harmless. *See Peterson v. Barnhart,* 213 Fed. Appx. 600, 605 (9th Cir. 2006) ("it is the ALJ's responsibility to determine the effect of a [plaintiff's] obesity on her other impairments, as well as its effect on her overall health and ability to work, given the existence of other impairments.") (citing *Celaya*, 332 F.3d at 1182); *Young v. Comm'r of Soc. Sec.*, No. 1:22-cv-00161-CDB (SS), 2024 WL 5186826, at *14 (E.D. Cal. Dec. 20, 2024) ("As the ALJ concluded, degenerative disc disease of the cervical and lumbar spine is a severe impairment and Dr. Lobo's medical records reflect that Plaintiff's obesity may aggravate this other impairment … The ALJ did not address these points in her decision and thus the record is undeveloped.").

Because the ALJ's failure to address *how* Plaintiff's obesity affected his other impairments deprives the Court of "reviewable, on-the-record findings," the Court will not reach the question of whether the record could, in fact, support the ALJ's conclusions. *See C.C.*, 2024 WL 1354437, at *10 (citing *Celaya*, 332 F.3d at 1183).

### C.    Plaintiff's Remaining Claims

The Court, having found that remand is warranted as discussed above, elects to forgo addressing Plaintiff's remaining claims involving the ALJ's allegedly erroneous failure to evaluate the treating medical source opinions of Plaintiff's mental health therapists and the ALJ's allegedly

25

erroneous failure to explain his departure from the mental work restrictions assessed by the state agency psychologists and the consultative psychological examiner. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach this alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) (explaining that the "Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand").

*        *        *        *        *

In sum, the ALJ failed to identify Plaintiff's subjective symptomology testimony he found not credible and failed to provide clear and convincing reasons for such rejection, including with respect to incorporation in the RFC of an allowance for frequent handling and fingering bilaterally that necessarily rejected without adequate bases and failed to reconcile Plaintiff's relevant testimony. The resulting error is not harmless. *Lambert*, 980 F.3d at 1278 (citing *Brown-Hunter*, 806 F.3d at 494). Likewise, the ALJ's failure to specifically address obesity in combination with Plaintiff's other impairments is legal error that is not harmless. *See Peterson,* 213 Fed. Appx. at 605.

### D.    Remedy

Plaintiff requests this case be remanded for further proceedings and a new decision. (Doc. 14 at 28). "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of court." *Trevizo*, 871 F.3d at 682 (*quoting Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (emphasis omitted) (9th Cir. 2004).

Given the errors identified above, the Court concludes that remand for further proceedings is warranted because additional administrative proceedings may remedy the deficiencies in the ALJ's decision noted herein.

///

///

**CONCLUSION AND ORDER**

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Doc. 14) is GRANTED;

2. The ALJ's decision (Docs. 10, 11) is REVERSED;

3. This matter is REMANDED pursuant to sentence four of 42 U.S.C. §405(g) for further proceedings consistent with this decision; and

4. The Clerk of the Court is DIRECTED to enter judgment in favor of Plaintiff Leonard Rene Garcia and against Defendant Commissioner of Social Security.

IT IS SO ORDERED.

Dated: __**March 26, 2026**__    _____

UNITED STATES MAGISTRATE JUDGE

27